IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMONT HAGAN,** | : | CIVIL NO. 1:17-CV-844 |
| **Plaintiff** | : | (Chief Judge Conner) |
| v. | : | |
| **JOHN WETZEL**, *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court in this civil rights action is a motion (Doc. 11) for preliminary injunction filed by plaintiff Damont Hagan ("Hagan"), an inmate currently confined at the Smithfield State Correctional Institution in Huntingdon, Pennsylvania ("SCI-Smithfield"). For the reasons set forth below, the court will deny the motion for preliminary injunction.

**I.      Standard of Review**

Inmate *pro se* pleadings which seek emergency relief in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure. Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citing AT&T v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994)).

The court applies a four-factor test in determining the propriety of preliminary injunctive relief. The movant must, as a threshold matter, establish the two "most critical" factors: likelihood of success on the merits and irreparable harm. Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017). Under the first factor, the movant must show that "it can win on the merits." Id. This showing must be "significantly better than negligible but not necessarily more likely than not." Id. The second factor carries a slightly enhanced burden: the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief. Id. Only if these "gateway factors" are satisfied is the court required to consider the third and fourth factors: the potential for harm to others if relief is granted, and whether the public interest favors injunctive relief. Id. at 176, 179. The court must then balance all four factors to determine, in its discretion, whether the circumstances favor injunctive relief. Id. at 179.

**II.  Discussion**

Hagan asserts that defendants interfered with his First Amendment right to file grievances while housed in the Behavioral Management Unit ("BMU") at SCI-Smithfield. (Doc. 12). Hagan claims that he is only permitted to make complaints verbally, and cannot file grievances or lawsuits. (Id. at 7). He further asserts that defendant Wetzel will not suffer harm from an injunction, that he should be housed in a D-Roster institution, and that his paranoia makes him a threat to his present institution. (Id. at 9). For relief, Hagan requests an order directing "Wetzel to place safe-guards within the grievance system regarding Hagan, so that Hagan can file

2

grievances in peace," and that defendant Wetzel "place Hagan in a D roster institution to finish his programming." (Id. at 11-12).

The court finds that Hagan cannot meet the heavy burden of establishing that injunctive relief is warranted.

   1.   **Likelihood of Success on the Merits**

Hagan claims that he is likely to succeed on the merits of his lawsuit because defendants retaliated against him for filing grievances and lawsuits by transferring him to a new correctional facility and placing him in the Behavioral Management Unit.

The First Amendment offers protection for a wide variety of expressive activities. See U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225). With respect to the first and second Rauser prongs, "[a]lthough the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is 'protected'

3

or an action is 'adverse' will depend on context . . . ." Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999). The fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates. See Pell v. Procunier, 417 U.S. 817, 822-23 (1974). Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Id. at 822.

Hagan asserts that the alleged retaliatory was undertaken in response to his filing of inmate grievances. The filing of grievances is protected activity under the First Amendment. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Thus, the first prong of Rauser, i.e., that the plaintiff be engaged in a constitutionally protected activity, has been satisfied.

Once it is determined that the inmate was engaged in protected conduct, he must demonstrate that he has suffered some adverse action at the hands of prison officials. See Rauser, 241 F.3d at 333 (citing Allah, 229 F.3d at 225). To show an "adverse action," the plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002), quoting Allah, 229 F.3d at 225. Adverse actions that are sufficient to support a retaliation claim include, as relevant to this case, transferring a prisoner to another prison and placing a prisoner in administrative custody. Allah, 229 F.3d at 225-26. Therefore, the transfer of Hagan to a new correctional facility and placement in the

4

Behavioral Management Unit constitutes adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

As to the third prong, a reasonable factfinder may credit Hagan's account that he was transferred to another facility and placed in the BMU in retaliation for filing grievances. However, at this juncture, the evidence before the court is insufficient to determine whether the timing between the protected conduct and the alleged retaliatory action is unusually suggestive. For purposes of this analysis, the court assumes that Hagan has established a basis for a reasonable finder of fact to infer a causal link between the protected conduct and the adverse action he alleges he suffered.

Thus, for the limited purpose of obtaining preliminary injunctive relief, Hagan has adequately demonstrated a "reasonable probability" of success on the merits.

**2. Irreparable Harm**

Irreparable injury is harm of such an irreversible character that prospective judgment would be "inadequate" to make the moving party whole. See Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). Mere risk of injury is not sufficient to meet this standard. Rather, the moving party must establish that the harm is imminent and probable. Anderson, 125 F.3d at 164. Harm that may be contained effectively only through immediate injunctive relief is properly deemed "irreparable." Instant Air Freight, 882 F.2d at 801. The required showings on irreparable harm and likelihood of success are correlative: thus, the weaker a plaintiff's merits showing, the more is

required of the showing of irreparable harm, and vice versa.  See Reilly, 858 F.3d at 179 (quoting Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co., 582 F.3d 721, 725 (7th Cir. 2009) (Easterbrook, J.)).

Hagan alleges that he is suffering irreparable harm in the BMU at SCI-Smithfield because he is limited to making complaints verbally.  While the court does not diminish Hagan's allegation, the court finds that he has not shown an immediate, irreparable harm justifying a preliminary injunction.  Hagan has not provided any facts or evidence that he is prevented from *making* complaints or *litigating* his claims.  To the contrary, Hagan is actively litigating this action.  He regularly files documents in this case and, contrary to his claim of restrictions on written complaints, the record is devoid of evidence that he has been denied access to the courts or denied the ability to file lawsuits.  Moreover, Hagan's general claims pertaining to the BMU inmate grievance policy are nonspecific, and he simply expresses his dissatisfaction with the grievance policy.  Furthermore, Hagan cannot show an entitlement to any equitable relief compelling prison officials to let him "file grievances in peace", because inmates do not have a constitutional right to file grievances.  Williams v. Beard, 2014 WL 4384359, at *7 (M.D. Pa. Sept. 3, 2014) (citing Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-38 (1977)).  See also Rivera v. Pennsylvania Dep't of Corrections, 346 F. App'x 749, 751 (3d Cir. 2009) (inmate cannot demonstrate that the prison's grievance procedure is inadequate or unconstitutional inasmuch as a prisoner has no constitutional right to a grievance procedure).

Thus, the court finds that Hagan has not shown an immediate, irreparable harm justifying a preliminary injunction.

### 3. Remaining Factors

In the exercise of caution, the court will also briefly review the third and fourth factors. Granting injunctive relief in the instant action, which would effectively require the federal court to make *ad hoc* and individual decisions concerning a single prisoner, could harm both the defendants' and the public's interest. In the prison context, defendants' interests and the public's interest in penological order could be adversely effected if the court began dictating the housing accommodations and terms for filing written complaints for one particular inmate. Therefore, consideration of "whether granting preliminary relief will result in even greater harm to the nonmoving party; and . . . whether granting the preliminary relief will be in the public interest," Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994), weighs heavily against Hagan in this case.

## III. Conclusion

Based on the foregoing, Hagan's motion for preliminary injunction will be denied. A separate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: February 16, 2018